**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**



| | | |
|---|---|---|
| SHAILA BERNARD, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No. 3:24-cv-2944-X |
| | § | |
| RTX CORPORATION, f/k/a RAYTHEON | § | |
| TECHNOLOGIES CORPORATION, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**ANSWER AND AFFIRMATIVE AND OTHER DEFENSES**
**TO PLAINTIFF'S COMPLAINT**

Defendant Raytheon Company, improperly identified as RTX Corporation, f/k/a

Raytheon Technologies Corporation, by and through its counsel, Seyfarth Shaw LLP, hereby

submits its Answer and Affirmative and Other Defenses to Plaintiff Shaila Bernard's

Complaint:[1]

**COMPLAINT ¶1:**

Plaintiff Shaila Bernard ("Bernard" or "Plaintiff") is a resident of Denton County, Texas.

**ANSWER:**

Upon information and belief, Defendant admits the allegations in Paragraph 1.

**COMPLAINT ¶2:**

Defendant RTX Corporation (referred to herein as "Raytheon") is a Delaware corporation
that was formerly known as Raytheon Technologies Corporation. Its principal place of business
is in Arlington, Virginia. Defendant may be served with process by serving its registered agent
for service of process in Texas, C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX
75201-3136.

---

[1] Raytheon Company, not RTX Corporation, was Plaintiff's employer. Raytheon Company is a wholly owned
subsidiary of RTX Corporation. Throughout Defendant's Answer and Affirmative Defenses to Plaintiff's
Complaint, Raytheon Company will be referred to as the "Defendant."

**ANSWER:**

Defendant admits that RTX Corporation, formerly known as Raytheon Technologies

Corporation, is a Delaware corporation that maintains its corporate headquarters in Arlington,

Virginia, and may be served through its registered agent in Texas, CT Corporation System.

Defendant denies all remaining allegations in Paragraph 2.

**COMPLAINT ¶3:**

This court has jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. §
1331.

**ANSWER:**

Defendant admits the allegations in Paragraph 3.

**COMPLAINT ¶4:**

This Court has personal jurisdiction over Defendant because it does a substantial amount
of business in Texas, and it has sufficient minimum contacts with the State of Texas to allow this
Court to exercise personal jurisdiction over the Defendant in this case.

**ANSWER:**

Defendant admits that this Court may properly exercise personal jurisdiction over

Raytheon Company in this matter. Defendant denies all remaining allegations in Paragraph 4.

**COMPLAINT ¶5:**

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of
the events or omissions giving rise to the claim occurred in this judicial district. Venue is also
proper in this Court under 42 U.S.C. § 2000e-5(f)(3) (incorporated into the ADA by 42 U.S.C. §
12117(a)) because the unlawful employment practices alleged herein occurred in the State of
Texas, and because Bernard would have continued to work in Dallas County (and other counties
which comprise the Dallas Division) if not for the unlawful employment practices complained of
herein.

**ANSWER:**

Defendant admits that venue is proper in this Court. Defendant denies all remaining

allegations in Paragraph 5.

**COMPLAINT ¶6:**

Plaintiff exhausted her administrative remedies and has complied with all procedural prerequisites to filing this lawsuit. On February 14, 2023, Plaintiff dual filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission, Civil Rights Division. A true and correct copy of this Charge is attached to this Complaint as Exhibit A. On February 19, 2024, Plaintiff filed an amended Charge of Discrimination. A true and correct copy of this Amended Charge is attached to this Complaint as Exhibit B. On August 27, 2024, more than 180 days after the amended charge was filed, the EEOC issued a Dismissal of Charge giving Plaintiff the right to file a lawsuit. A true and correct copy of this Dismissal of Charge is attached to this Complaint as Exhibit C.

**ANSWER:**

Defendant admits that Plaintiff dual filed a Charge of Discrimination with the EEOC and

the Texas Workforce Division on February 14, 2023, and that it was attached to the Complaint.

Defendant admits that Plaintiff alleges to have filed an Amended Charge of Discrimination on

February 27, 2024, and attached it to her Complaint. Defendant admits that the EEOC issued a

Dismissal and Notice of Rights on August 27, 2024, and Plaintiff attached it to her Complaint.

Defendant denies all remaining allegations in Paragraph 6.

**COMPLAINT ¶7:**

Bernard was born with Cerebral Palsy. For her entire life, she has had left-side hemiparesis, which substantially limits her ability to move the left side of her body. She walks with a limp, and she is unable to use her left hand, so she types with only her right hand. Her disability is apparent to anyone who sees her. Her physical impairments substantially limit one or more major life activities, including walking, standing, lifting, caring for herself, and performing manual tasks.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of

whether Plaintiff was born with Cerebral Palsy and to the extent that it limits her abilities.

Defendant denies all remaining allegations in Paragraph 7.

**COMPLAINT ¶8:**

Bernard has a bachelor's degree in computer science, and she began working as a software engineer in 1995. By 2021, she had 26 years of experience as a software engineer

working for defense contractors and tech companies, including an earlier period of employment for sixteen years at another Raytheon company, Raytheon Missiles Division (1995 — 2011).

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 8.

**COMPLAINT ¶9:**

During the last half of 2021, Bernard applied for an open position as a Senior Software Configuration Manager at Raytheon Intelligence and Space, which was a business unit of Raytheon Technologies Corporation ("Raytheon"). The position required the applicant to have the ability to obtain a Department of Defense (DoD) security clearance. Bernard already had this clearance for the job she was working in at the time.

**ANSWER:**

Defendant admits that Plaintiff applied for a position with Defendant during the last half

of 2021, and that the position required the applicant to have the ability to obtain a security

clearance. Defendant denies all remaining allegations in Paragraph 9.

**COMPLAINT ¶10:**

Bernard later had two job interviews with Rachael Biederman and Benny Ray Johnson. During these interviews, Bernard said she could not work with hardware, and the interviewers confirmed that the position she was being considered for was strictly software and did not require working with hardware.

**ANSWER:**

Defendant admits that Plaintiff interviewed with Biederman and Johnson. Defendant

denies all remaining allegations in Paragraph 10.

**COMPLAINT ¶11:**

By letter dated December 13, 2021, Raytheon offered Bernard a job as Principal Engineer, Software Engineering, reporting to Rachael Biederman, and Bernard accepted the offer. For some reason, Raytheon later sent another offer letter dated January 11, 2022 offering Bernard a job as Principal Software Engineer, reporting to Rachael Biederman.

**ANSWER:**

Defendant admits that it sent Plaintiff an offer letter dated January 11, 2022, offering

Plaintiff the position of Principal Engineer, Software Engineering reporting to Rachel

Biederman. Defendant denies all remaining allegations in Paragraph 11.

**COMPLAINT ¶12:**

The job (or jobs) Raytheon offered was a higher-paying job than the one Bernard applied for, and it was more in line with Bernard's qualifications.

**ANSWER:**

Defendant admits that it offered Plaintiff a higher paying job than the one she applied for,

and that the offered job was believed to be more in line with her qualifications. Defendant denies

all remaining allegations in Paragraph 12.

**COMPLAINT ¶13:**

Bernard accepted Raytheon's offer, and her first day on the job was March 7, 2022. Bernard was told she would be working on the Palinode program, which involved work on the software used by the U.S. Air Force for certain weapons and communications systems. However, pending a third-party government contractor's investigation and approval of her security clearance to work on this project, she was unable to work on some aspects of the project.

**ANSWER:**

Defendant admits the allegations in Paragraph 13.

**COMPLAINT ¶14:**

During her first three weeks, Bernard worked on site at Raytheon's Richardson location. During this time, Bernard met with and worked with several Raytheon employees, Rachael Biederman, Benny Ray Johnson, Liz Ottwell, and Darrell Simon. Each of these Raytheon employees saw that that Bernard had a substantially-limiting physical impairment. Bernard and Ottwell also had a face-to-face discussion in which Bernard told Ottwell she had Cerebral Palsy and had been treated successfully for seizures. From these encounters and discussions, Raytheon knew of Bernard's disabilities as early as March 2022.

**ANSWER:**

Defendant admits that Plaintiff worked on-site at Defendant's Richardson, Texas location

during the first several weeks of her employment, and that she worked with Biederman, Johnson,

Ottwell, and Simon during her employment. Defendant denies all remaining allegations in

Paragraph 14.

## COMPLAINT ¶15:

After the first three weeks of onboarding, Bernard worked mostly from home. She was told she was classified as "awaiting assignment" pending approval of her security clearance to work on tasks that required the clearance.

## ANSWER:

Defendant admits that Plaintiff worked remotely for a period of time while her security

clearance was pending. Defendant denies all remaining allegations in Paragraph 15.

## COMPLAINT ¶16:

Raytheon began to assign discreet tasks on some non-classified aspects of the Palinode program, but Raytheon never provided Bernard with an overall understanding of her job and her duties. After several weeks of asking what her duties were, Darrell Simon (a mentor and coworker in software) began to educate her on the Palinode program, and Bernard was told to also take online leadership and training classes, which she did. At all times during her employment, Bernard performed the tasks she was assigned, and no supervisor or manager ever told her that she was failing to meet expectations.

## ANSWER:

Defendant admits that Plaintiff was assigned non-classified work on the Palinode

program, and that Simon provided her some guidance on that program. Defendant denies all

remaining allegations in Paragraph 16.

## COMPLAINT ¶17:

After becoming aware of Bernard's disability in the summer of 2022, Katie Rohler (Project Owner over the Palinode program) began to treat Bernard differently because of her disability. It started during a Zoom meeting between Rohler and Bernard in which Bernard shared her computer screen with Rohler, and Rohler could see what Bernard was typing. Rohler expressed frustration and said something like, can't you type any faster?

## ANSWER:

Defendant denies the allegations in Paragraph 17.

**COMPLAINT ¶18:**

Rohler treated Bernard differently after she learned of Bernard's disability. Rohler began subjecting Bernard to increased scrutiny, and she sent requests wanting to watch and monitor Bernard as she worked. There was never a problem with Bernard's work product or timeliness, but Rohler began sending instant messages and chats, and more requests to cease what Bernard was doing to jump on a Zoom meeting with Rohler.

**ANSWER:**

Defendant denies the allegations in Paragraph 18.

**COMPLAINT ¶19:**

Rohler showed an increased level of interest in Bernard's work, and she began to question Bernard's ability to do her job, which Bernard found to be demeaning. Rohler also began talking to and emailing Rachel Biederman, Benny Ray Johnson, and Darrell Simon questioning Bernard's abilities. In turn, Biederman questioned Bernard, asking if she had the qualifications she listed when she applied for the job. Bernard grew frustrated by Rohler's conduct and Biederman's questions, because Bernard just wanted to do her job in peace and not be treated differently because of her disabilities.

**ANSWER:**

Defendant admits that Rohler had concerns regarding Plaintiff's job performance, and

that she had communications with Biederman, Johnson, and Simon regarding Plaintiff's job

performance. Defendant denies all remaining allegations in Paragraph 19.

**COMPLAINT ¶20:**

Bernard complained to Biederman and to Liz Ottwell about Rohler's conduct, but nothing improved. Typing speed was not an essential function of the position, and but for her physical disabilities, Bernard would not have been subjected to Rohler's needless intrusions and demeaning questions about her qualifications and abilities.

**ANSWER:**

Defendant admits that Plaintiff complained about Rohler's management of her.

Defendant denies all remaining allegations in Paragraph 20.

**COMPLAINT ¶21:**

Bernard also discussed her complaints with Sarah Campo in HR, but Campo did not act on Bernard's complaints.

**ANSWER:**

Defendant admits that Plaintiff complained to Campo about Rohler's management of her.

Defendant denies all remaining allegations in Paragraph 21.

**COMPLAINT ¶22:**

Later that summer, in August 2022, Bernard began to experience extreme pain in her jaw and in both ears, which she believed to be side effects caused by a COVID-19 booster vaccine. She became unable to work, and she tried to reach Biederman and Rohler by phone to let them know she would be away from work, but she was unable to reach them. Bernard then spoke to someone in HR who told Bernard to take PTO (paid time off) as needed. Bernard emailed Rohler to let her know she was taking PTO.

**ANSWER:**

Defendant admits that on Friday, August 5, 2022, Plaintiff emailed Rohler and notified

her for the first time that she was planning to take PTO leave from Monday, August 8 through

Monday, August 29, 2022. Defendant denies that Plaintiff was instructed to take PTO as needed.

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in Paragraph 22.

**COMPLAINT ¶23:**

When Bernard was able to resume working, Biederman gave Bernard a verbal warning not to take time off, even if it was medically necessary. Biederman also said she was going to put a written warning in Bernard's file.

**ANSWER:**

Defendant admits that Biederman gave Plaintiff a warning for violating the PTO policy.

Defendant denies all remaining allegations in Paragraph 23.

**COMPLAINT ¶24:**

Thereafter, probably in October 2022 or very early November 2022, Bernard had a Zoom meeting with Biederman, Ottwell, and Campo. Biederman told Bernard that Raytheon no longer had any software work to do on the Palinode program, so Bernard was being reassigned to a hardware position reporting to Liz Ottwell where she would have to work hands on with equipment, 100% on site at Raytheon's Richardson location.

**ANSWER:**

Defendant denies the allegations in Paragraph 24.

**COMPLAINT ¶25:**

Bernard told Biederman and Campo that she was physically unable to work with hardware unless Raytheon provided her with medical accommodations. At the end of the call, Bernard was not clear on how her request for accommodations would be handled, so she sent an email to Biederman and Campo stating she would need accommodations if she was going to be reassigned to a hardware position.

**ANSWER:**

Defendant denies the allegations in Paragraph 25.

**COMPLAINT ¶26:**

On November 2, 2022, a Raytheon accommodations nurse (Michael Dolliver) sent an email to Bernard stating that Raytheon had received her request for reasonable accommodations, and he attached a medical certification form to his email and said it needed to be filled out by a doctor and returned within thirty days. On page three of the form, it said: "Refer to Essential Functions Worksheet when answering these questions." After that, there were three questions, including: "What essential job function(s) listed in the Worksheet is the employee having trouble performing because of the limitation(s)?" However, Raytheon did not provide an Essential Functions Worksheet, or anything else listing the essential job functions of the hardware job she was being reassigned to. Based on the information provided there was no way a doctor could determine what accommodations were needed, if any.

**ANSWER:**

Defendant admits that Dolliver sent Plaintiff a Medical Certification Form on November 2, 2022, and that the Form requested the information described in Paragraph 26. Defendant denies all remaining allegations in Paragraph 26.

**COMPLAINT ¶27:**

Bernard nevertheless tried to comply with Dolliver's instructions, and she scheduled an appointment with her primary care doctor, Samiska Shah, to discuss accommodations. The earliest available appointment was on December 15, 2022, so Bernard let Dolliver know she would not be able to respond within the 30-day period allowed by Raytheon.

**ANSWER:**

Defendant admits that Plaintiff notified Dolliver that she had a doctor's appointment on

December 15. Defendant denies all remaining allegations in Paragraph 27.

**COMPLAINT ¶28:**

Meanwhile, Raytheon prevented Bernard from working because she was not assigned or told to perform any tasks. Bernard tried to get a job description for her newly-assigned hardware position, so her doctor would know what the essential functions of the position were and be able to complete the certification form, but nothing was provided for several weeks. The uncertainty and lack of communication from Raytheon was distressing and anxiety inducing.

**ANSWER:**

Defendant denies the allegations in Paragraph 28.

**COMPLAINT ¶29:**

On December 7, 2022, Dolliver sent Bernard an email stating: "I was able to gather this job description for your upcoming appointment with your provider so that they can review and complete your ADA form." He attached a document to his email, but it was not a job description. It was an Excel spreadsheet named "FJR.xlsx," and it looked nothing like the requisition Bernard saw when she applied for a job at Raytheon.

**ANSWER:**

Defendant admits that Dolliver sent Plaintiff an email on December 7, 2022, attaching an

Excel spreadsheet titled "FJR.xlsx" that described Plaintiff's job and functional job

requirements. Defendant denies all remaining allegations in Paragraph 29.

**COMPLAINT ¶30:**

At the top of the spreadsheet it said "Functional Job Requirements," and there was a narrative describing the essential functions for Principal Software Engineer. This was the job title of the position Raytheon told Bernard she no longer had; it was not a description of the hardware job Biederman told her she was being assigned to. Also, unlike the requisition, this spreadsheet mentioned Shaila by name (e.g. "Shaila's job is primarily a desk position ..."), whereas the requisition was generic ("The candidate will provide ..."). The FJR document also stated that this was a 100% on-site position, which would be a major change because Bernard worked mostly from home in her prior position.

**ANSWER:**

Defendant admits that the spreadsheet described the functional job requirements of

Plaintiff's job as a Principal Software Engineer. Defendant denies all remaining allegations in

Paragraph 30.

**COMPLAINT ¶31:**

Dolliver's December 7, 2022 email copied several people as cc's, and later that day Bernard replied to all asking Dolliver what position the FJR document was for. One of the people copied on the email was Natalie Waite, a Human Resources Manager. Waite replied to Bernard on December 8, 2022, stating: "The Job Description that was sent to you, was created by your manager, based on the current activities you perform today. This should be sufficient for what your physician is looking for, in order to properly understand what accommodations may be required for your current health condition." Bernard was still confused because she was not currently performing any duties, and Waite's reply did not clarify the duties of the hardware position.

**ANSWER:**

Defendant denies that Bernard was confused and assigned to a "hardware" position.

Defendant admits the remaining allegations in Paragraph 31.

**COMPLAINT ¶32:**

Bernard therefore sent an email to several Raytheon managers and HR employees asking for the job description for her new position, and stating the one that had been provided was inadequate. Her email also said: "Liz Ottwell and Rachael Biederman have stated they are moving me out of software so I need to understand how this job is different. Both these ladies stated they were moving me out of software. So given that I have 27 years in software where are they putting me? In hardware? Electrical? Testing? Please provide me a job title and skills listed with a current job requisition." Raytheon never answered this basic question.

**ANSWER:**

Defendant admits that Plaintiff sent the email with the quoted language. Defendant denies

all remaining allegations in Paragraph 32.

**COMPLAINT ¶33:**

Sarah Campo in HR responded to Bernard on December 9, 2022, stating that Raytheon did not have job descriptions. Campo did not answer Bernard's question asking what position she was being assigned to, she simply said that Bernard's doctor should use the FJR document to determine what accommodations would be needed in her new role. This still did not make sense,

because the FJR document described a software position that was primarily a desk job, and Bernard had been told she was being assigned a hardware job. Furthermore, Bernard did not need (and had not asked for) accommodations for a software job; she had only asked for accommodations to perform the essential functions of the hardware position. If she was being transferred to a different software position, she could have been working continuously without accommodations. Raytheon was keeping her from working by refusing to clarify what her new job assignment was.

**ANSWER:**

Defendant admits that Campo responded to Bernard and indicated that Plaintiff's doctor should review the FJR document. Defendant denies all remaining allegations in Paragraph 33.

**COMPLAINT ¶34:**

By this time, Bernard had retained counsel, who sent a letter to Raytheon on December 9, 2022 alleging disabilities discrimination based on Raytheon's actions to date, and noting how Raytheon was failing to engage in the interactive process by refusing to clarify what new position Bernard was being moved into. A true and correct copy of this letter is attached to this Complaint as Exhibit D. To Bernard's knowledge, Raytheon never responded to this letter and it never clarified whether the new position was hardware, software, or something else.

**ANSWER:**

Defendant admits that Plaintiff retained counsel who sent a letter to Defendant that was attached to the Complaint. Defendant denies all remaining allegations in Paragraph 34.

**COMPLAINT ¶35:**

On December 15, 2022, Bernard met with her primary care doctor to go over Raytheon's medical certification form. Dr. Shah told Bernard she was unable to describe the accommodations needed without knowing what the essential job functions were, so she declined to fill out the medical certification form.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.

**COMPLAINT ¶36:**

Bernard was ready and willing to work, and she never refused the reassignment, but Raytheon never told Bernard what her new hardware job would be. Raytheon never told her what the essential functions of the new hardware job were, and Raytheon never engaged in the interactive process required by the ADA concerning accommodations needed for the hardware

job. Instead, Raytheon took the position that Bernard was refusing to work, so the company stopped paying her.

**ANSWER:**

Defendant admits that Plaintiff refused to work. Defendant denies all remaining

allegations in Paragraph 36.

**COMPLAINT ¶37:**

On February 15, 2023, Bernard let Campo know that she had an appointment scheduled with her doctor in March, and she asked again for the requisition for the position she was being moved to. Campo replied stating (for the first time) "We do not have a requisition for the role you were moved to." Two days later, Campo added that "requisitions are used when a role is competed" [sic], and she reiterated the instruction telling Bernard to have her doctor use the FJR to determine what accommodations may be required.

**ANSWER:**

Defendant admits that Plaintiff indicated that she had a doctor appointment in March and

requested a job requisition from Campo. Defendant admits that Campo responded by stating that

"we do not have a requisition for the role you were moved to" and instructed Bernard to have her

doctor review the functional job requirements document that had been provided to her.

Defendant denies all remaining allegations in Paragraph 37.

**COMPLAINT ¶38:**

If Raytheon creates requisitions when roles are "completed," then it should have had a requisition for Bernard's new position. Raytheon told Bernard that she had been moved into this new position, so the position had been created, completed, and staffed. Campo's statement therefore made no sense, and her repetition of the instruction to use the FJR did not advance resolution of the issue.

**ANSWER:**

Defendant denies the allegations in Paragraph 38.

**COMPLAINT ¶39:**

On February 27, 2023, Campo emailed Bernard asking if she had everything she needed for her March doctor's appointment. Bernard replied that she did not, she still needed the job description for her current position. Campo replied with the same non-response (no clarification whether the position was software, hardware, electrical, testing, or something else) telling her

just use the FJR document. Bernard explained again that the FJR form did not provide information about the job duties she would be performing, so her doctors were unable and unwilling to complete the medical certification Raytheon wanted.

**ANSWER:**

Defendant admits that Campo contacted Bernard and instructed her to have her doctor review the functional job requirement document that was provided to her. Defendant denies all remaining allegations in Paragraph 39.

**COMPLAINT ¶40:**

Bernard went to an appointment in March with Dr. Kellam, her neurologist. He said he was unable to complete the medical certification without knowing more about the tasks they wanted her to perform. Bernard emailed Raytheon letting them know, and still Raytheon did not clarify what her job was.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of whether Plaintiff went to an appointment with Dr. Kellam in March and what Dr. Kellam said during the alleged appointment. Defendant denies all remaining allegations in Paragraph 40.

**COMPLAINT ¶41:**

On June 21, 2023, Bernard had a Zoom meeting with Rachel Biederman, who explained that Bernard's position had been eliminated due to corporate restructuring. Bernard was told that she could apply to other open positions.

**ANSWER:**

Defendant admits that Plaintiff was told she could apply to other positions. Defendant denies all remaining allegations in Paragraph 41.

**COMPLAINT ¶42:**

During July and August 2023, Bernard and Campo exchanged emails about the potential for Bernard to move into an open position, and Bernard applied for and interviewed for open positions. Bernard was not hired to fill any of the jobs she applied for.

**ANSWER:**

Defendant admits that Bernard and Campo exchanged emails in July and August 2023.

Defendant denies all remaining allegations in Paragraph 43.

**COMPLAINT ¶43:**

On September 12, 2023, Raytheon sent Bernard an email telling her she was being laid off as of September 26, 2023. Raytheon also sent her a layoff package telling her she had been eliminated as part of a reduction in force. The layoff package said the group considered for layoff (the decisional unit) consisted of three employees whose job titles were all listed as "Prin Eng, Software Engrg." Only one of the three employees, Bernard, was selected for layoff.

**ANSWER:**

Defendant admits the allegations in Paragraph 43.

**COMPLAINT ¶44:**

The package said the decision on who to layoff was based on three criteria, but two of the three were not applicable because of the facts. The second criterion was: "one or more of the employees in the decisional unit volunteered to be laid off and the Company accepted them as a volunteer, if applicable," but according to the layoff package, no one volunteered. The third criterion was "all of the positions in the decisional unit were eliminated," but the other two employees were not selected for layoff and remained employed in their positions.

**ANSWER:**

Defendant admits the allegations in Paragraph 44.

**COMPLAINT ¶45:**

This leaves only the first criterion as the basis for the decision. It was: "a relative ranking of each employee within the decisional unit using the following four criteria: "current performance, job knowledge, flexibility/initiative, and length of service." However, Bernard had no current position — she was told in June 2023 that the job she had been placed in during the last quarter of 2022 no longer existed. Therefore, except for length of service, none of the factors listed could have been used to compare Bernard to the other two employees considered for layoff.

**ANSWER:**

Defendant denies the allegations in Paragraph 45.

**COMPLAINT ¶46:**

The reduction in force was a false and pretextual excuse for terminating Plaintiff's employment.

**ANSWER:**

Defendant denies the allegations in Paragraph 46.

**COMPLAINT ¶47:**

Raytheon discriminated against Bernard because of her disability, and then retaliated against her because she requested accommodations and opposed Raytheon's discriminatory conduct.

**ANSWER:**

Defendant denies the allegations in Paragraph 47.

**COMPLAINT ¶48:**

At all times relevant to this case, Bernard was an "employee" of Defendant as the term "employee" is defined in Title I of the ADA.

**ANSWER:**

Defendant admits that Plaintiff was employed by Defendant. Defendant denies all remaining allegations in Paragraph 48.

**COMPLAINT ¶49:**

At all times relevant to this case, Raytheon was Bernard's "employer" as the term "employer" is defined in Title I of the ADA.

**ANSWER:**

Defendant admits that it was Plaintiff's employer. Defendant denies all remaining allegations in Paragraph 49.

**COMPLAINT ¶50:**

At all times relevant to this case, Raytheon employed more than 500 employees.

**ANSWER:**

Defendant admits the allegations in Paragraph 50.

**First Cause of Action**
**<u>Disabilities Discrimination — Failure to Accommodate</u>**

**<u>COMPLAINT ¶51:</u>**

At all times relevant to this case, Bernard was a qualified individual with one or more disabilities.

**<u>ANSWER:</u>**

Defendant denies the allegations in Paragraph 51.

**<u>COMPLAINT ¶52:</u>**

Raytheon discriminated against Bernard in violation of 42 U.S.C. §122112(b)(5)(A) by failing to fulfill its duty to engage in the interactive process, which resulted in its failure to provide reasonable accommodations.

**<u>ANSWER:</u>**

Defendant denies the allegations in Paragraph 52.

**<u>COMPLAINT ¶53:</u>**

Because of Raytheon's violations of the ADA, Bernard has suffered and will continue to suffer loss of income, benefits, and compensatory damages. Bernard is also entitled to attorney's fees and costs incurred in connection with the claims asserted herein.

**<u>ANSWER:</u>**

Defendant denies the allegations in Paragraph 53.

**<u>COMPLAINT ¶54:</u>**

Raytheon committed the violations of the ADA with reckless disregard or deliberate disregard for Bernard's federally protected rights. Bernard is therefore entitled to an award of punitive damages.

**<u>ANSWER:</u>**

Defendant denies the allegations in Paragraph 54.

**Second Cause of Action**
**Disabilities Discrimination — Disparate Treatment**

**COMPLAINT ¶55:**

At all times relevant to this case, Bernard was a qualified individual with one or more disabilities.

**ANSWER:**

Defendant denies the allegations in Paragraph 55.

**COMPLAINT ¶56:**

At all relevant times, Bernard had the requisite skill, experience, education, and other job-related requirements of her position, and she was able to safely perform all essential functions of the position, with or without reasonable accommodations.

**ANSWER:**

Defendant denies the allegations in Paragraph 56.

**COMPLAINT ¶57:**

Raytheon discriminated against Bernard in ways that adversely affected the terms and conditions of her employment. When Rohler became aware of Bernard's disabilities, she subjected Bernard to increased scrutiny and questioned Bernard's managers about her abilities, which caused one or more of her managers to question Bernard directly. Soon afterwards, Raytheon took away all of Bernard's duties and prevented her from working for over seven months, and then told her that her position had been eliminated. About three months after that, on September 12, 2023, Raytheon told her she was being laid off from the position that, according to Raytheon, no longer existed.

**ANSWER:**

Defendant denies the allegations in Paragraph 57.

**COMPLAINT ¶58:**

Raytheon took these actions because of Plaintiff's disabilities, in violation of 42 U.S.C. § 12112.

**ANSWER:**

Defendant denies the allegations in Paragraph 58.

**COMPLAINT ¶59:**

Raytheon's violations of the ADA have caused Plaintiff to suffer loss of income, benefits, and compensatory damages. Bernard is also entitled to attorney's fees and costs incurred in connection with the claims asserted herein.

**ANSWER:**

Defendant denies the allegations in Paragraph 59.

**COMPLAINT ¶60:**

Raytheon committed the violations of the ADA with reckless disregard or deliberate disregard for Bernard's federally protected rights. Bernard is therefore entitled to an award of punitive damages.

**ANSWER:**

Defendant denies the allegations in Paragraph 60.

**Third Cause of Action**
**Retaliation**

**COMPLAINT ¶61:**

Bernard engaged in protected activity starting in July or August 2022 when she opposed the disability discrimination that began after Katie Rohler learned of her disabilities, and continuing thereafter. Bernard later formally complained of disabilities discrimination and retaliation by filing a Charge and an Amended Charge of Discrimination.

**ANSWER:**

Defendant admits that Plaintiff filed a Charge and Amended Charge of Discrimination.

Defendant denies all remaining allegations in Paragraph 61.

**COMPLAINT ¶62:**

After Bernard's opposition to discrimination began, Raytheon retaliated against her by ignoring her complaints and failing to intervene to prevent disabilities discrimination. For example, Rachel Biederman told Bernard that she should just accept and tolerate Rohler's intrusive and demeaning efforts to hover and monitor Bernard while she worked, and Rohler's baseless questioning of other employees whether Bernard had the required software knowledge and skills. Many of Raytheon's subsequent actions were the kinds of employment actions that would dissuade a reasonable person from making or supporting a charge of discrimination, such as removing her from her software duties and assigning her to a job in hardware that did not align with her qualifications and career path, failing to pay her salary, failing to adequately engage in the interactive process by refusing to disclose information about the hardware position

she was reassigned to, provide reasonable accommodations, falsely claiming there was no more software work for her to do on the Palinode program, and terminating her employment.

**ANSWER:**

Defendant denies the allegations in Paragraph 62.

**COMPLAINT ¶63:**

Raytheon's action violated the anti-retaliation provisions of the ADA, 42 U.S. Code § 12203.

**ANSWER:**

Defendant denies the allegations in Paragraph 63.

**COMPLAINT ¶64:**

Raytheon's unlawful retaliation damaged Bernard by causing her to suffer loss of income and benefits, suffering, mental anguish, inconvenience, loss of personal status and dignity, loss of enjoyment of life, and other damages. Plaintiff is also entitled to attorneys' fees, expert witness fees, and costs incurred in connection with these claims.

**ANSWER:**

Defendant denies the allegations in Paragraph 64.

**COMPLAINT ¶65:**

Raytheon's unlawful retaliatory acts were committed with malice or reckless indifference to Plaintiff's federally protected rights. Bernard is therefore entitled to, and hereby seeks, punitive damages.

**ANSWER:**

Defendant denies the allegations in Paragraph 65.

## Equitable and Injunctive Relief

**COMPLAINT ¶66:**

Defendant intentionally engaged in the unlawful employment practices described in this Complaint. Plaintiff therefore asks this Court to enjoin Raytheon from engaging in such unlawful employment practices, and to order affirmative relief, such as reinstatement of Bernard to her former position or a substantially equivalent position, with back pay and full restoration of all seniority and benefits of employment, plus such other equitable relief as this Court deems appropriate.

**ANSWER:**

Defendant denies that it acted unlawfully and that Plaintiff is entitled to any relief

whatsoever.

## Attorney Fees, Expert Witness Fees, and Costs

**COMPLAINT ¶67:**

Plaintiff requests an award of reasonable attorney fees, expert witness fees, and costs of

court.

**ANSWER:**

Defendant admits the allegations in Paragraph 67. Answering further, Defendant denies

that it acted unlawfully and that Plaintiff is entitled to any relief whatsoever.

## Jury Demand

**COMPLAINT ¶68:**

Plaintiff demands a trial by jury on all claims asserted in this Complaint for which a trial

by jury is allowed by law.

**ANSWER:**

Defendant admits the allegations in Paragraph 68.

## AFFIRMATIVE AND OTHER DEFENSES

In addition to the defenses and denials set forth above, Defendant asserts the following

affirmative and other defenses. In pleading these defenses, Defendant does not assume the

burden of proof as to matters that, pursuant to law, are Plaintiff's burden to prove. Defendant

reserves the right to plead any additional affirmative and other defenses as they become known

during the pendency of this action.

1.      Plaintiff's damage claims are barred in whole or in part because she failed to

exercise reasonable diligence in the mitigation of damages.

2.      Plaintiff's damage claims are offset in whole or in part by the value of Defendant's overpayment to Plaintiff.

3.      To the extent that Plaintiff's claims are based on alleged conduct or omissions that occurred prior to the applicable statute of limitations (i.e. 300 days prior to the filing of underlying Charge for her ADA claims and 180 days prior to the filing of her underlying Charge for her TCHRA claims) or Amended Charge, such claims are barred in whole or in part.

4.      Plaintiff's claims are barred in whole or in part to the extent they rely on conduct or omissions outside the scope of her underlying Charge and/or Amended Charge.

5.      Plaintiff's claims are barred in whole or in part to the extent that she failed to exhaust her administrative remedies.

6.      To the extent Plaintiff alleges that any employee of Defendant acted in an unlawful manner, such conduct, if it occurred, was outside the course and scope of that individual's employment, was not authorized or condoned by Defendant, and was undertaken without the knowledge or consent of Defendant. Thus, Defendant is not liable for any such conduct, if it occurred.

7.      Defendant asserts that even if some impermissible motives were a factor in any employment decision concerning Plaintiff, a claim that Defendant expressly denies, the same decision(s) would have been reached for legitimate business reasons.

8.      Relief in the form of punitive or liquidated damages is barred because of Defendant's good-faith efforts to comply with antidiscrimination laws, including the ADA and the TCHRA.

9.      Any and all actions taken by Defendant were based on legitimate non-discriminatory, non-retaliatory, and non-pretextual reasons.

10.     Defendant's actions, if any, were done in good faith, without malice, and without intent to violate the law or cause Plaintiff harm. As such, the relief sought by Plaintiff in the form of exemplary or punitive damages is not available.

11.     Plaintiff cannot recover punitive or exemplary damages because the conduct about which Plaintiff complains, if wrongful, did not result from fraud, malice, or gross negligence.

12.     Plaintiff's recovery, if any, is limited under all constitutional and statutory caps and/or limitations, including applicable damages caps and from applicable civil rights statutes, as well as all other limitations (constitutional, statutory, and common-law) on awards of compensatory and/or punitive damages such as the caps and limitations on damages set forth in Chapter 21 of the Texas Labor Code, the Texas Civil Practice & Remedies Code (including Chapter 41), the Texas constitution, and the Federal constitution.

13.     To the extent that discovery or investigation reveal separate, consequential misconduct, then Defendant will rely upon that after-acquired evidence to limit Plaintiff's claim for damages.

DATED:  January 15, 2025

Respectfully submitted,

SEYFARTH SHAW LLP


By:  */s/ Esteban Shardonofsky*

Esteban Shardonofsky
Texas Bar No. 24051323
sshardonofsky@seyfarth.com
Jason M. Torres Illinois Bar No. 6278611
jtorres@seyfarth.com
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas 77002-2812
Telephone:   (713) 225-2300
Facsimile:   (713) 225-2340

ATTORNEYS FOR DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing document was served upon the person(s) listed below via the Court's CM/ECF electronic filing system on this 15th day of January, 2025:

> Donald E. Uloth
> Law Office of Donald E. Uloth
> 182028 Preston Road, Suite D-9 #261
> Dallas, Texas 75252
> ATTORNEY FOR PLAINTIFF

*/s/ Jason M. Torres*
Jason M. Torres

315002682v.5